AUSA Peter S. Salib (312) 697-4092

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LISA IFEOMA ONACHUKWU OKOLI | Case No.: **18 CR 829**<br><br>Magistrate Judge Jeffrey Cole |

## AFFIDAVIT IN REMOVAL PROCEEDING

I, ANDREW JOHN INNOCENTI, personally appearing before United States Magistrate Judge Jeffrey Cole and being duly sworn on oath, state that as a federal law enforcement officer I have been informed that LISA IFEOMA ONACHUKWU OKOLI has been charged by Complaint in the Central District of California with the following criminal offense: engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

A copy of the Complaint is attached. A copy of the arrest warrant also is attached.

ANDREW JOHN INNOCENTI
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 6th day of December, 2018.

JEFFREY COLE
United States Magistrate Judge

**FILED**
DEC 06 2018 LR
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>LISA IFEOMA ONACHUKWU OKOLI | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>MJ 18-3229 |

FILED
CLERK U.S. DISTRICT COURT
DEC - 6 2018
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Complaint for violation of Title 18, United States Code, Section 1957

| NAME OF MAGISTRATE JUDGE<br>HONORABLE CHARLES F. EICK | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATES OF OFFENSES<br>September 26, 2017 | PLACE OF OFFENSES<br>Ventura County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity]

On or about September 26, 2017, in Ventura County, within the Central District of California, and elsewhere, defendant LISA IFEOMA ONACHUKWU OKOLI, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in the following monetary transaction, affecting foreign and interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343: a transfer of $30,000 from BMO Harris Bank account number –2826 to Shanghai Pudong Development Bank account number -0217.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>JAMES "KIMO" HILDRETH /S/<br>OFFICIAL TITLE<br>Task Force Officer, Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>CHARLES F. EICK | DATE<br>December 6, 2018 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA ROBYN K. BACON, x. 4667        REC: Detention

## AFFIDAVIT

I, James "Kimo" Hildreth, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Lisa Ifeoma Onachukwu OKOLI for a violation of 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND FOR TASK FORCE OFFICER HILDRETH

3. I am an Investigator with the Ventura County District Attorney's Office and a Task Force Officer (TFO) with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2016. I am currently assigned to a Los Angeles Field Division Task Force, which is responsible for investigating computer and high-technology crimes, including computer intrusions, and other types of malicious computer

activity. My position has vested me with the authority to investigate violations of federal criminal law, including computer-related investigations and computer technology.

4. Prior to being assigned to the FBI, I served as a Peace Officer in the State of California for twenty-five years: six years as a Deputy Sheriff for the County of Los Angeles, eleven years as an Investigator and six years as a Supervising Investigator with the Los Angeles County District Attorney's Office, Bureau of Investigation, and two years as an Investigator with the Ventura County District Attorney's Office, Bureau of Investigation. I have had extensive training in Law Enforcement and Criminal Investigation. I attended the Basic Peace Officer Training Course at the Los Angeles County Sheriff's Department Training Center, a California Post accredited police academy in Southern California. My education includes a Bachelor of Arts Degree in Business Finance from Washington State University. I have had extensive additional training in advanced criminal investigations.

5. I have held several investigative assignments within the Los Angeles District Attorney's Bureau of Investigation, including Family Support Operations, Branch Office Trial Support, Operations, Welfare Fraud, Auto Insurance Fraud, and High Tech crimes as a Cyber Investigator, a Computer Forensic Examiner, and a supervisor. I was a member of the United States Secret Service, Los Angeles Electronic Crimes Task Force (cross-sworn as Federal Marshal) for thirteen years. I am currently assigned to the Ventura County office of the Southern California

High Tech Task Force where I conduct computer forensic examinations and investigate offenses relating to the criminal use of high technology, including the criminal use of computers and computer networks, and identity theft. Most recently I have been collaborating with the Federal Bureau of Investigation (FBI) Business Email Compromise (BEC) Working Group and investigating online wire fraud cases affecting the local business communities.

6. I am a Certified Forensic Computer Examiner (CFCE) with the International Association of Computer Investigative Specialists (IACIS); a GIAC Certified Forensic Analyst (GCFA), GIAC Security Essentials Certified (GSEC) with the SANS institute; a Certified Information System Security Professional (CISSP) with ISC2; a Macintosh Forensic Examiner with Department of Defense Cyber Investigative Training Academy (DCITA); and an EnCase Certified Examiner (EnCE) with Guidance Software. I have attended over 1200 hours of computer forensic classes with California Department of Justice, United States Department of Defense, and private vendors. I have conducted hundreds of forensic examinations on computers, personal digital assistants (PDA), mobile telephones, digital cameras, compact disks (CD), digital video disks (DVD), floppy disks, GPS devices, USB flash drives, and other forms of removable media.

### III. SUMMARY OF PROBABLE CAUSE

7. On September 19 and September 21, 2017, an unidentified perpetrator transferred $319,000 from Victim P.D.'s

American Savings Bank ("ASB") account to a Bank of America account belonging to D.B. in Ventura, CA, without authorization.

8. On September 22, 2017, D.B. – acting at the request of an individual she knew as "George Lewis" with whom she believed she was involved in a long-term online romantic relationship and to whom she had given over $200,000 under false pretenses – wired $80,000 of the stolen money to an account at BMO Harris Bank account ending in 2826, in the name of AXL Services, Inc. ("AXL Services") and belonging to OKOLI ("the 2826 Account").

9. On September 26, 2017, OKOLI wired $30,000 of the stolen money to an account at Shanghai Pudong Development Bank ("SPD Bank") belonging to Ningbo Everrising Imports & Exports in Ningbo, China ("the Ningbo account").

10. Although OKOLI registered AXL Services as a business in Illinois in 2016, in fact, AXL Services exists in name only and the activity in the 2826 Account is not consistent with legitimate business activity

11. Based on this evidence, I believe there is probable cause to conclude that, on September 26, 2017, OKOLI knowingly engaged in a financial transaction with the proceeds of bank fraud.

### IV. STATEMENT OF PROBABLE CAUSE

A. BACKGROUND REGARDING ONLINE FRAUD SCHEMES AND MONEY LAUNDERING

12. Based on my training and experience in cyber-crime investigations as well as my discussions with other law enforcement, I know the following:

a. Romance scams are an increasingly common form of computer-based fraud. In a typical romance scam, a fraudster meets victims through online dating websites, initiates a romantic relationship under an assumed identity, and defrauds unsuspecting victims out of their lifesavings, often by building a victim's trust before asking for financial assistance, or – as described below – help carrying out fraudulent financial transactions.

b. As part of these schemes, perpetrators will often create shell companies, i.e., businesses with no legitimate activity that exist in name only. These shell companies will often have bank accounts, sometimes called "money mule accounts," that the fraudsters use to conceal and move the proceeds of their fraud. Typically, once victims deposit money into a shell company account, the perpetrators then transfer the money from those accounts into another money mule account or to bank account(s), often overseas, owned or controlled by the perpetrators.

c. In addition to using shell company bank accounts, perpetrators also use bank accounts belonging to individuals who are not themselves aware of or part of the fraud scheme as money mule accounts. These unwitting "money mules" – many of whom are victims themselves of romance scams – accept funds into their accounts (which they often do not realize are stolen) at the request of a purported romantic partner or financial advisor. Acting at the direction of the perpetrator, the money mules transfer funds from their own accounts into another money mule

account or to bank account(s), often overseas, owned or controlled by the perpetrators.

  d. In addition, because these schemes can involve large amounts of money, perpetrators will often enlist the services of individuals that have multiple "money mules" at their disposal to help conceal and move their fraudulently obtained money. These individuals, sometimes referred to as "mule herders," are responsible for developing and retaining an army of "money mules," who themselves will often have multiple bank accounts, often in the names of fictitious businesses. When an online fraudster successfully steals a large sum of money, the "mule herder" will divide the proceeds and direct them to a number of "money mules" in order to reduce the risk of loss if an individual "money mule" is caught by law enforcement or decides to keep the money.

  B. **SEPTEMBER 19 and 21, 2017 – $319,000 STOLEN FROM VICTIM P.D.**

  13. On or about February 15, 2018, I reviewed Honolulu Police Department ("HPD") Incident Report number 17-375798, from which I learned that, on or about October 4, 2017, victim P.D. reported to HPD that unidentified perpetrators had "hacked" into his ASB bank accounts, transferred $319,000 from one account into another account, and then wired the funds to a Bank of America account in California. I also reviewed P.D.'s ASB bank statement and saw a deposit into P.D.'s bank account on September 19, 2017 in the amount of $149,000 and a subsequent domestic wire to "[D.B.] Bank of America, N.A." for the same

amount. Similarly, on September 21, 2017, $170,070 was deposited into P.D.'s account and $170,000 was withdrawn by wire.

14. On or about February 8, 2018, I reviewed a declaration letter from Gwen Omori, ASB's AML Compliance Officer, regarding the unauthorized wire transfers from P.D.'s account, from which I learned that, on September 19 and September 21, 2017, ASB received emails purporting to be from P.D. instructing ASB to send two outgoing wire transfers for $149,000 and $170,000, respectively, from P.D.'s account to a Bank of America account ending in 8332, belonging to Victim D.B. ("the D.B. account"). The wire transfers were completed. I also learned that, on October 2, 2017, P.D. notified ASB that the two wire transfers were unauthorized, and ASB tried to recall the two wire transfers from the D.B. account, but the funds were no longer there.

C. **SEPTEMBER 22, 2017 - $80,000 WIRE FROM VICTIM D.B. TO THE 2826 ACCOUNT**

15. On or about October 5, 2017, I spoke to FBI Supervising Special Agent ("SSA") Mike Sohn regarding an investigation into a possible romance scam whose victim was a resident of Ventura County, California. From that conversation, I learned that, on or about October 3, 2017, Victim D.B., age 56, called the FBI Public Access Line to report that she had been the victim of fraud and had lost more than $200,000.

16. On or about October 10, 2017, I interviewed D.B. by phone. During the call, D.B. said the following, among other things:

   a. D.B. said that she met "George Lewis" on Match.com in 2015, and they began an online relationship. Approximately eight weeks into the relationship, Lewis told her that he had fallen on hard times and asked for a small loan. Throughout the course of the relationship, Lewis seemed to experience bad luck continually and said that he needed additional loans. D.B. said that, in total, she "loaned" Lewis over $200,000, money she obtained by: taking out a $100,000 home equity line of credit; borrowing $6,000 from her son; borrowing $15,000 from her mother; withdrawing $25,000 from her IRA account; redeeming credit card points for $2,000 in cash; withdrawing $1,500 from her savings account; and giving Lewis over $50,000 from her paychecks. D.B. said that throughout this time she believed without doubt that Lewis loved her and intended to spend his life with her.

   b. D.B. also said that she and Lewis never met in person, but they made plans to do so in Ventura in mid-September 2017. However, Lewis did not show up, at which point D.B. became suspicious. Then, on or about September 20, 2017, Lewis contacted D.B. and said that he had been in jail, which is why he did not meet her and why she had not been able to contact him. Lewis then told D.B. that his business was doing well and a customer was going to wire $310,000 into D.B.'s bank account (i.e., the D.B. account). Lewis instructed D.B. to send three

outbound wires once the funds arrived into her account as follows:

      i. $80,000 to the BMO Harris Bank 2826 Account, referenced above;

      ii. $85,000 to a BMO Harris Bank account ending in 3481, in the name of "Rephaiah Trading & Logistics" ("the Rephaiah Trading Account"); and

      iii. $140,000 to a Capitol One account ending in 2735, in the name of Tiano Procurement LLC.

17. D.B. also provided me with screenshots of text messages and emails she exchanged with Lewis. The screenshots included the following exchanges between D.B. and Lewis:



**D. SEPTEMBER 26, 2017 – OKOLI SENDS A $30,000 OUTBOUND WIRE FROM THE AXL SERVICES ACCOUNT**

18. On or about December 5, 2018, I reviewed records from BMO Harris Bank regarding the 2826 account. From my review of those records, I learned the following:

    a. During the month of September 2017, the primary source of funds in the 2826 Account were:

        i. a $7,100 inbound wire on September 8, 2017 from a Wells Fargo account belonging to T.M. The remittance information says "replace dish washer";

        ii. a $7,440 teller deposit on September 11, 2017;

        iii. a $9,500 inbound wire on September 18, 2017, also from T.M.'s Wells Fargo account; and

        iv. an $80,000 inbound wire from the D.B. account on September 22, 2017.

    b. During the month of September 2017, there were three outbound wires from the 2826 Account:

        i. a $11,650 wire to the Ningbo Account on September 13, 2017 with the remittance information "ELECTRICAL SUPPLIES (DEBASCO)";

        ii. a $30,000 wire to the Ningbo Account on September 26, 2017 with the remittance information "DEBASCO ELECTRICAL" ("the September 26, 2017 wire"); and

        iii. a $11,500 wire to a Standard Bank of South Africa account in the name of Hempel Paints South with the

remittance information "SENDER: VICTOR ADEWUMI (CONSUMABLE PERSONAL ITEMS)".

c. At the time of the September 26, 2017 wire, the funds in the AXL Services account primarily comprised the $80,000 wire transfer from the D.B. account.

19. On or about December 5, 2018, I contacted Diana Kwiecien, an Investigative Analyst at BMO Harris Bank, who confirmed that the September 26, 2017 wire was sent in person from a BMO Harris Bank branch in Cicero Illinois and that, per BMO Harris Bank policy, OKOLI was required to present identification when sending the wire.

E. **FURTHER INVESTIGATION OF OKOLI AND AXL SERVICES**

1. <u>Evidence that AXL Services is a Shell Company</u>

20. Over the course of this investigation, I have conducted multiple online and open source queries for AXL Services and I have been unable to find a website, email address, or phone number for AXL Services, or any information about AXL Services' business on the internet.

21. Similarly, a query of Dun and Bradstreet also showed that AXL Services does not have a D-U-N-S ("DUNS") number. From my training and experience, I know that a DUNS number is a unique nine-digit identifier for businesses that is used to establish a business's credit file, which is often referenced by lenders and potential business partners to help predict the reliability and/or financial stability of the company. I also know that businesses, even small businesses, often have DUNS numbers in order to facilitate financial transactions.

22. On December 5, 2018, I learned the following from FBI SA Jason Ghetian:

a. On or about December 1, 2018, SA Ghetian reviewed the Instagram account for "lisaokoli." He saw that the profile name for the account is "Lisa Okoli" and the profile photo is a picture that depicts the same person depicted in OKOLI's driver's license photo.

b. On OKOLI's Instagram account, SA Ghetian saw that OKOLI identifies herself as a director for Rely Logistics in Chicago from "August 2016 to Present • 2 yrs 5 mos." Based on OKOLI's claim that she started at Rely Logistics in August 2016 and has worked there for "2 yrs 5 mos," Sa Ghetian concluded that OKOLI's Instagram account appeared to have been updated recently.

c. SA Ghetian also saw that OKOLI said that she worked at Centurion Realty and Estates from "June 2013 to Present," a real estate broker from "January 2016 to Present," and a leasing administrator from June 2013 to January 2016. There were no references to AXL Services on OKOLI's Instagram account.

2. OKOLI's text exchange with OLOBA about the $80,000 wire from D.B.

23. As discussed above, "George Lewis" instructed victim D.B. to wire $85,000 to the Rephaiah Trading Account at BMO Harris Bank. On multiple occasions during this investigation, I reviewed records from BMO Harris Bank regarding the Rephaiah Trading account. From my review of those records, I learned

that the sole signator for the Rephaiah Trading account is Kolade Isaac OLOBA.

24. Throughout the course of this investigation, I have had multiple conversations with SA Ghetian, from whom I learned the following:

    a. On or about September 21, 2018, in case number 8:18-MJ-502, SA Ghetian obtained a federal search warrant authorizing the search, among other things, OLOBA's phone.

    b. On or about November 7, 2018, SA Ghetian found the following text message exchange on OLOBA's phone between OLOBA and an individual identified on the phone as "Li*":

| | |
|---|---|
| Oloba: | On d phone<br>Text<br>Me |
| Li*: | Bmo issue<br>80 is being requested back |
| Oloba: | Wow!!!!!<br>No pick up call anymore from dem 000 |

25. On or about December 5, 2018, I contacted William Witherspoon of Bank of America, who told me that Bank of America tried to recall the $80,000 wire transfer from the D.B. account to the 2826 Account.

26. Based on the foregoing, my work in this investigation, and my training and experience, I believe that "Li*" is OKOLI and that "80" is a reference to the $80,000 wire from D.B., which – as discussed above – Bank of America tried to recall from BMO Harris Bank.

## V. CONCLUSION

27. For all the reasons described above, there is probable cause to believe that OKOLI has committed a violation of 18 U.S.C. § 1957.

/s/
JAMES "KIMO" HILDRETH
Task Force Officer
FEDERAL BUREAU OF
INVESTIGATION

Subscribed to and sworn before me this 6th day of December, 2018.

**CHARLES F. EICK**

UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT

I, James "Kimo" Hildreth, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Lisa Ifeoma Onachukwu OKOLI for a violation of 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND FOR TASK FORCE OFFICER HILDRETH

3. I am an Investigator with the Ventura County District Attorney's Office and a Task Force Officer (TFO) with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2016. I am currently assigned to a Los Angeles Field Division Task Force, which is responsible for investigating computer and high-technology crimes, including computer intrusions, and other types of malicious computer

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　PLAINTIFF,<br><br>v.<br><br>LISA IFEOMA ONACHUKWU OKOLI,<br><br>　　　　　　　　DEFENDANT(S) | **WARRANT FOR ARREST**<br><br>ON COMPLAINT<br><br>CASE NO.: 18-3229 |

To:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **LISA IFEOMA ONACHUKWU OKOLI** and bring her forthwith to the nearest Magistrate Judge to answer a complaint charging him with Transactional Money Laundering, in violation of Title 18, United States Code, Section 1957.

REC: BY AUSA R. Bacon          [Detention]

__12/6/18__
Date

**CHARLES F. EICK**
Name of Magistrate Judge

**CHARLES F. EICK**
Signature of Magistrate Judge

### RETURN

This warrant was received and executed with the arrest of the above-named defendant at (location):

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: |
|---|---|---|---|---|---|---|
| | | | | | | |

| DATE OF BIRTH: | PLACE OF BIRTH: | SOCIAL SECURITY NO.: | DRIVER'S LICENSE NO. | ISSUING STATE |
|---|---|---|---|---|
| | | | | |

| ALIASES: | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: |
|---|---|
| | |

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|
| | | | | | |

| LAST KNOWN RESIDENCE: | LAST KNOWN EMPLOYMENT: |
|---|---|
| | |

**FBI NUMBER:**

**ADDITIONAL INFORMATION:**

| INVESTIGATIVE AGENCY NAME: | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|
| | |

**NOTES:**